IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC.,<br><br>*Plaintiffs,*<br>v.<br><br>JOHNSON & JOHNSON, INC. and CORDIS CORPORATION,<br><br>*Defendants.* | C.A. No. 07-333-SLR<br>C.A. No. 07-348-SLR<br>C.A. No. 07-409-SLR |
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC.,<br><br>*Plaintiffs,*<br>v.<br><br>JOHNSON & JOHNSON, INC., CORDIS CORPORATION, and WYETH,<br><br>*Defendants.* | C.A. No. 07-765-SLR<br><br>**CONSOLIDATED CASES** |

**PLAINTIFFS' POST-HEARING BRIEF IN OPPOSITION TO DEFENDANT WYETH'S MOTION TO DISQUALIFY HOWREY LLP FROM REPRESENTING PLAINTIFFS**

*Of Counsel:*

Richard L. DeLucia
Paul M. Richter
Michael K. Levy
**KENYON & KENYON LLP**
One Broadway
New York, NY 10004
(212) 425-7200

James F. Hibey
Matthew M. Wolf
John E. Nilsson
**HOWREY LLP**
1299 Pennsylvania Avenue NW
Washington, DC 20004
(202) 783-0800

YOUNG CONAWAY STARGATT & TAYLOR LLP
Josy W. Ingersoll (#1088) [jingersoll@ycst.com]
Karen L. Pascale (#2903) [kpascale@ycst.com]
Karen E. Keller (#4489) [kkeller@ycst.com]
Andrew A. Lundgren (#4429) [alundgren@ycst.com]
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6600

*Attorneys for Plaintiffs, Boston Scientific Corporation and Boston Scientific Scimed, Inc.*

August 11, 2009

# TABLE OF CONTENTS

                                                                                           **Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

I.     WYETH BEARS THE BURDEN OF ANY CONFUSION AS TO THE IDENTITY OF HOWREY'S CLIENT ............................................................................ 3

II.    HOWREY'S ETHICAL WALL IS A SUFFICIENT SAFEGUARD ................................ 7

III.   DISQUALIFYING HOWREY WOULD HAVE POLICY IMPLICATIONS FOR ALL MULTINATIONAL LAW FIRMS WITH GLOBAL CLIENTS .............................. 9

CONCLUSION ........................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Clark Capital Management Group, Inc. v. Annuity Investors Life Insurance Co.*,
    149 F. Supp. 2d 193 (E.D. Pa. 2001) ............................................................................... 8

*Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*,
    142 F. Supp. 2d 579 (D. Del. 2001) ................................................................................. 8

*John Wyeth & Bros. Ltd. v. Cigna Ins. Co.*,
    2001 WL 239739 (EWCA (Civ) Feb. 9, 2001) ................................................................ 9

*John Wyeth & Bros. Ltd. et al., v. Judicial Review*,
    2008 WL 2443262 (Sess. June 10, 2008) ........................................................................ 9

*Manchak v. Rollins Environmental Servs*,
    C.A. No. 96-37-SLR, 1996 U.S. Dist. LEXIS 20542 (D. Del. Dec. 18, 1996) ................ 6

*Pioneer Standard Electronics, Inc. v. CapGemini America, Inc.*,
    No. 01CV2185, 2002 U.S. Dist LEXIS 7120 (N.D. Ohio Mar. 11, 2002)) ..................... 8

*SWS Fin. Fund A v. Salomon Bros.*,
    790 F. Supp. 1392 (N.D. Ill. 1992) ................................................................................ 10

*United States v. Miller*,
    624 F.2d 1198 (3d Cir. 1980) ........................................................................................... 9

*Wyeth v. Knoll Aktiengesellschaft*,
    2002 WL 499016 (EWHC May 9, 2002) ........................................................................ 9

Pursuant to the Court's instruction at the July 22, 2009 hearing, Plaintiffs Boston Scientific Corp. and Boston Scientific Scimed, Inc. (collectively, "BSC") submit this supplemental, post-hearing brief in opposition to Wyeth's motion to disqualify Howrey LLP ("Howrey") from representing BSC.

## PRELIMINARY STATEMENT

At the close of the July 22, 2009 evidentiary hearing, the Court requested briefing to address two questions. *First*, the Court asked "when you've got multi-national businesses with all sorts of corporate iteration[s], and when you've got multi-national law firms . . . who bears the burden of keeping the corporate entities straight?" (07/22/09 Hearing Transcript ("Tr.") at 174:4-8.) The evidence adduced at the hearing compels the conclusion that, if the Wyeth entities intended their attorney-client relationship with Howrey to extend to their corporate parent, they bore the burden of making that intent clear. The record shows unequivocally that:

- Wyeth has numerous separately incorporated subsidiaries in Europe with "Wyeth Pharmaceuticals" in its name;

- Howrey attorneys in Europe have performed work for these subsidiaries;

- The in-house lawyers with whom the Howrey attorneys dealt had instructed those attorneys on behalf of the subsidiaries;

- The Howrey attorneys consistently communicated their understanding that they were acting for the Wyeth Pharmaceuticals subsidiaries; and

- The Howrey attorneys were unaware, until the hearing, of any unincorporated division of Wyeth also called "Wyeth Pharmaceuticals."

In this case, as the Court observed, "the only outstanding matter where Wyeth, the parent, might actually be a client is this Lonza matter." (*Id.* at 175:19-21.) However, Wyeth's witness, David Manspeizer, did not directly instruct Howrey in the Lonza matter and was therefore unable to testify as to any specific course of dealing that would have put Howrey on notice that Wyeth, the parent company, believed itself to be Howrey's client. Howrey's primary witness, Dr. Joachim Feldges, by contrast, was directly involved in Howrey's work on the Lonza matter and competently testified that he only learned of an unincorporated division called "Wyeth

1

Pharmaceuticals" during the hearing. As the Court suggested, "if a corporation wants to keep its corporate divisions and entities and affiliates straightened out, its employees have an obligation to educate the public." (Tr. at 174:17-20.) Having failed to meet that obligation, Wyeth should not be permitted to exploit the resulting confusion as a basis for disqualifying Howrey in this case (even assuming that Wyeth, the parent, believed itself to be Howrey's client).

*Second*, the Court asked – again, given that "the only outstanding matter where Wyeth, the parent, might actually be a client is this Lonza matter" – "whether the ethical [wall] that has been constructed is sufficient." (*Id.* at 175:19-25.) Notwithstanding Mr. Manspeizer's efforts to portray Howrey's work in the Lonza matter before the European patent office as extensive and irreplaceable, the undisputed evidence shows that:

- Howrey attorneys have not worked a single hour on the Lonza matter in 2009;

- Howrey attorneys and their personnel collectively worked fewer than 70 hours on the Lonza matter since its inception (all of which were billed in 2008);[1]

- No U.S.-based Howrey attorney has ever worked on the Lonza proceeding; and

- The Lonza matter is factually unrelated to the case at bar.

Under these circumstances – even if Howrey is found to represent Wyeth, the parent, in the Lonza matter – the ethical wall that Howrey has already established is more than sufficient to prevent prejudice to Wyeth should Howrey be permitted to represent BSC here and continue to act for Wyeth in the Lonza matter. If Wyeth nevertheless feels compelled to replace Howrey, there is no risk that any confidences obtained by Howrey will be used to Wyeth's detriment. In that event, given Howrey's limited activity in the Lonza matter, Wyeth's suggestion that it would be unable to find competent substitute counsel is implausible.

---

[1] Notwithstanding Mr. Manspeizer's testimony that Howrey's work on Lonza was "considerable" and it would cause Wyeth great prejudice to substitute counsel (*see* Tr. at 29:18-24, 61:1-8), in fact, Jeroen den Hartog, the Howrey employee that billed the majority of the time in Lonza (43 of the 68 hours) is a European patent attorney, similar to a patent agent and separate and distinct from an attorney-at-law. (*See* BSX 16; Tr. 124:3-18; 96:25-97:20; *see also* p. 7.)

2

Unduly restrictive enforcement of the ethical rules across jurisdictions would deprive multi-national law firms and their clients of the benefits and efficiencies offered by such firms. For all of these reasons, as set forth in greater detail below, the Court should deny Wyeth's motion to disqualify Howrey from representing BSC.

## I. WYETH BEARS THE BURDEN OF ANY CONFUSION AS TO THE IDENTITY OF HOWREY'S CLIENT

Wyeth's securities filings disclose at least six discrete, incorporated subsidiaries with "Wyeth Pharmaceuticals" in their names, including four in Europe. (DX 27.) Mr. Manspeizer himself acknowledged at least five:

> Q. Does Wyeth have any separately incorporated subsidiaries that have the phrase Wyeth Pharmaceuticals in their name?
>
> A. Yes, it does. If you look at the document, you will see that there are a number of them. Wyeth Pharmaceuticals, Inc., which is a separately incorporated Delaware corporation. There are several other internationally. Wyeth Pharmaceuticals S.A./N.V. in Belgium. Wyeth Pharmaceutical Co., Ltd., in China. Wyeth Pharmaceuticals, France. Wyeth Pharmaceuticals Limited in Ireland. Wyeth Pharmaecuticals B.V. in the Netherlands. At least those.

(Tr. at 55:24-56:13.) He admitted that these subsidiaries were legally separate from Wyeth, the corporate parent. (*Id.* at 83:20-23.)

Mr. Manspeizer further acknowledged that Howrey had worked for a number of the Wyeth Pharmaceuticals subsidiaries in Europe: "in some instances, they [Howrey attorneys] were representing Wyeth Pharmaceuticals B.V., or S.A., or Wyeth Pharma GmbH. In many instances, they were representing both Wyeth and the local subsidiary." (*Id.* at 81:10-21; *see id.* at 55:24-56:13.) For example, he claimed that Howrey represented both Wyeth and Wyeth Pharmaceuticals B.V., a Netherlands subsidiary, in writing a series of letters to competitors of Wyeth Pharmaceuticals B.V. (*Id.* at 38:8-13, 40:3-11.) The Howrey attorney involved, however, believed Wyeth Pharmaceuticals, not Wyeth, to be the client. (BSX 26.)

Further compounding the confusion, there is no dispute that the in-house lawyers who purportedly instructed Howrey on behalf of Wyeth the parent (or a division of the parent) were

3

the same lawyers who had instructed Howrey on behalf of the incorporated Wyeth subsidiaries. Mr. Manspeizer admitted that Dr. Feldges's principle in-house contact, Sally Mannion, is based in England and employed by European subsidiary John Wyeth & Brothers Ltd. (Tr. at 76:3-14.) Because she is based in England, Ms. Mannion is largely responsible for the Wyeth entities' matters in Europe. (*Id.* at 43:6-10; 76:13-18.) In connection with Howrey's work on behalf of Wyeth Pharmaceuticals, B.V., the Netherlands subsidiary, she "would have been the one who directly interacted with the Howrey lawyers." (*Id.* at 38:10-39:9.) The blurring of corporate identities is reflected in a remittance from Ms. Mannion's office, which, as the Court noted, "says Wyeth Pharmaceuticals on the top, with an England address, and then at the very bottom, in little tiny print, ... says John Wyeth & Brother[s] Limited...." (*Id.* at 174:9-15; BSX 30.)

While the in-house lawyers, according to Mr. Manspeizer, sometimes instructed Howrey on behalf of Wyeth, the parent, and sometimes did so on behalf of the subsidiaries – without indicating which hat they were wearing at any given moment – the Howrey lawyers consistently evidenced their understanding that they were acting for the Wyeth Pharmaceuticals subsidiaries. As shown at the hearing, Howrey sent invoices to Wyeth Pharmaceuticals in the United Kingdom, Wyeth Pharmaceuticals S.A./N.V. in Belgium, and Wyeth Pharmaceuticals in the Netherlands. (BSX 7, 8, 11, 14.) Howrey sent Client Representation Memoranda to Wyeth Pharmaceuticals subsidiaries (BSX 1, 19); no such memoranda were sent to the parent (or any unincorporated division of the parent) because Howrey did not believe the parent to be its client. (Tr. at 171:7-12.) A presentation discussed at the hearing was addressed by Howrey to "Wyeth Pharmaceuticals, Inc." – not Wyeth. (DX 33.)

For his part, Dr. Feldges testified that he had never even heard of "Wyeth Pharmaceuticals, the unincorporated division," until the present motion was filed. (Tr. at 146:19-24; *see id.* at 170:7-17.) There is no record evidence of any in-house lawyer informing Howrey that its client was an unincorporated division of Wyeth – as opposed to the subsidiaries, which clearly were Howrey's clients. Nor has Wyeth identified any public documents from which Howrey might have gleaned the existence of such an unincorporated division. As Mr.

4

Manspeizer admitted, Wyeth's securities filings reflect only the distinct subsidiaries noted above; they do not mention any unincorporated division. (DX 27; Tr. at 56:14-18 ("it's not a subsidiary. It's a non-incorporated division. This is a list of separately incorporated subsidiaries.").) Wyeth relies on only one document reflecting the existence of an unincorporated division (Tr. at 35:14-21; DX 36) – "an internal document" that was "not publicly available"; there is no evidence that Howrey ever saw this document. (*Id.* at 111:10-17.)

The record evidence conclusively established that the only matter in which Wyeth, the parent, could be a current Howrey client is the Lonza matter, an opposition proceeding before the European Patent Office. (*See* Tr. at 175:19-21.) However, of the in-house lawyers who actually communicated with Howrey regarding that matter – Sally Mannion, Elizabeth Hurley, Thomas Szatkowski, and Aaron Young (*id.* at 19:22-20:5) – none testified at the hearing. Wyeth's contention that Howrey's client in the Lonza proceeding was not a separate Wyeth Pharmaceuticals subsidiary but rather Wyeth Pharmaceuticals – "an unincorporated division of Wyeth, the parent company" (*id.* at 31:12-13) – rests entirely on Mr. Manspeizer's testimony. Mr. Manspeizer, however, had no direct involvement in that matter:

> Q. And so I take it that no Howrey lawyer ever spoke to you about the Lonza matter?
>
> A. They didn't need to.
>
> ....
>
> Q. So I take it they never spoke to you?
>
> A. That's what I said.

(Tr. at 70:23-71:7.) Mr. Manspeizer was too far removed from the course of dealing between lawyer and client in the Lonza matter for his testimony to be given significant weight.

Only one witness at the hearing had direct, personal knowledge of Howrey's work on the Lonza matter – Dr. Feldges of Howrey's Munich office. He testified that he always believed his client in the Lonza proceeding was a Wyeth Pharmaceuticals subsidiary – not Wyeth, the parent. (Tr. at 132:5-13, 134:19-22, 161:12-14.) Howrey's internal billing records confirm that Howrey considered the client in the Lonza matter to be the same as that in prior Wyeth-related

5

engagements – a Wyeth Pharmaceuticals subsidiary. (*See* BSX 16; Tr. at 124:21-125:4, 132:5-8.)² So do the invoices, which are directed to Wyeth Pharmaceuticals, not Wyeth. (DX 35.)

Given this record, it is clear that Howrey acted in good faith in seeking to represent its longtime client, BSC, in this case. When BSC asked Howrey to represent it here, the firm ran a conflict check that identified the Wyeth Pharmaceuticals subsidiaries as a firm client. (*See* Tr. at 167:2-9.) Howrey then confirmed that the Wyeth Pharmaceuticals subsidiaries were distinct from Wyeth, the defendant here, and concluded that there was no substantive relationship between work done for the Wyeth Pharmaceuticals subsidiaries and work done for Wyeth. (*Id.* at 167:10-21.)

In light of the tangled relationship between Wyeth, its divisions, and its subsidiaries, the onus should not have been on Howrey to uncover them when Wyeth the parent (or Wyeth Pharmaceuticals, the unincorporated division) – as opposed to one of the Wyeth Pharmaceuticals subsidiaries that Howrey had undeniably represented – was supposedly the client. Howrey consistently believed, in good faith, that its client was a Wyeth Pharmaceuticals subsidiary and it consistently communicated that belief. Any confusion between Wyeth, Wyeth Pharmaceuticals the division, and all of the various Wyeth Pharmaceuticals subsidiaries – a confusion that was palpable throughout the hearing – was of Wyeth's own making.³ Wyeth should not be permitted to exploit that confusion for tactical advantage here. Because Wyeth failed to provide Howrey with information that would arguably have identified the client in the Lonza proceeding as Wyeth, the parent – information that was in Wyeth's exclusive control – Howrey's participation in that matter should not disqualify it from representing BSC here.

---

² The only evidence that Wyeth offered in support of its contention that Dr. Feldges actually understood his client in the Lonza matter to be Wyeth, the parent, was the listing of Wyeth as the "opponent" in the opposition papers. (*See* BSX 2.) As Dr. Feldges explained, however the formal opponent need not be the client. Indeed, it often is not; it may even be a "straw man" designated as the opponent for standing purposes. (Tr. at 134:11-18, 141:6-13, 149:8-13.)

³ As the Court has noted in other contexts, the corporate distinctions between parent and subsidiary are necessary and important; indeed, when a subsidiary functions merely as another name for the parent the corporate veil itself may be pierced. *Manchak v. Rollins Environmental Servs*, No. 96-37 (SLR), 1996 U.S. Dist. LEXIS 20542, at **9-10 (D. Del. Dec. 18, 1996).

## II. HOWREY'S ETHICAL WALL IS A SUFFICIENT SAFEGUARD

At close of the hearing, the Court observed that "the only outstanding matter where Wyeth, the parent, might actually be a client is this Lonza matter." (Tr. at 175:19-21.)[4] Despite Wyeth's and Mr. Manspeizer's attempts to portray Howrey's role in that matter as intensive and indispensable, the record shows that Howrey's work on the Lonza matter has been of extremely limited scope. The undisputed evidence establishes that no Howrey lawyer has billed a single hour to that matter in 2009. (*See id.* at 125:5-126:13; *id.* at 94:19-95:12; BSX 16.) Indeed, since its inception, Howrey attorneys and their personnel have worked fewer than 70 hours on the matter (all of them in 2008). (*See* Tr. at 126:14-19; *id.* at 95:13-16; BSX 16.)

It is also undisputed that no U.S.-based Howrey attorney has ever worked on the Lonza proceeding; as Mr. Manspeizer admitted:

> Q. ... And, again, in this [Lonza] matter, only European lawyers from Howrey had worked on the case; is that correct?
>
> A. I believe that's true.

(Tr. at 96:21-24; *see id.* at 126:20-24.) None of the Howrey lawyers who would work on this case have performed any work for Wyeth entities or discussed the substance of such work with any Howrey lawyers in Europe. (*Id.* at 165:22-166:16.)

Finally, the evidentiary hearing confirmed that the subject matter of the Lonza proceeding is unrelated to that of the case at bar. As Mr. Manspeizer admitted:

> Q. ... [T]his [Lonza] is a matter involving a patent on the method of antibody purification; isn't that correct?
>
> A. That is correct.
>
> Q. And it is absolutely unrelated to the patents-in-suit; is that correct?
>
> A. I believe that to be the case.

(Tr. at 95:19-25; *see id.* at 131:13-132:4, 127:11-16.)

---

[4] Indeed, the uncontroverted evidence shows that all of other matters raised by Wyeth at the hearing are inactive and unrelated to the case at bar. (*See, e.g.*, Tr. at 103:8-23, 104:16-105:1, 109:4-17.)

7

Despite the absence of any factual relationship between the Lonza proceeding and the case at bar, Howrey has taken the additional step of erecting an "ethical wall" to restrict communications between Howrey attorneys working on that proceeding and those working on this case. (*Id.* at 166:17-167:1.) Such a precaution is more than sufficient to protect the interests of Wyeth, even if the Court were to conclude that Wyeth is Howrey's client. *Pioneer-Standard Electronics, Inc. v. CapGemini America, Inc.*, No. 01CV2185, 2002 U.S. Dist Lexis 7120 (N.D. Ohio Mar. 11, 2002), is directly on point. There, the court refused to disqualify the defendant's law firm even though the firm represented Pioneer (the U.S. plaintiff) in a pending and unrelated European regulatory matter. *Id.* at *13. The court held there was "no reason to believe that [defendant's law firm] could not pursue both the [U.S.] litigation and the European Commission matter with equal vigor and without using confidential information to the detriment of either client." *Id.* at *11; *see also Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F. Supp. 2d 579, 584 (D. Del. 2001) (motion to disqualify not warranted where matters were not directly related, the work was being performed out of different offices in different cities, and the law firm has maintained an ethical wall); *Clark Capital Mgmt. Group, Inc. v. Annuity Investors Life Ins. Co.*, 149 F. Supp. 2d 193, 198 (E.D. Pa. 2001) ("In the event that confidential information was disclosed, I find that disqualification of [the law firm] is an inappropriate remedy under the facts of this case, but rather that screening [the attorney] from the case will appropriately balance the interests of all parties").

Disqualification is particularly inappropriate here in light of Wyeth's failure to come forward with any credible showing of prejudice stemming from Howrey's concurrent participation in the Lonza proceeding and this case. The evidence at the hearing showed that Wyeth and Mr. Manspeizer have exaggerated both the scope of the Lonza matter and Howrey's importance to it. Given the limited scope of the Lonza matter, the Court need not accept Mr. Manspeizer's insistence that, if Howrey were not disqualified, Wyeth would be forced to terminate the engagement of the European Howrey lawyers working on that matter. (*Cf.* Tr. at 60:12-13.) Moreover, if Wyeth nevertheless chose to terminate Howrey, any suggestion that

8

Wyeth would face any difficulties in retaining another qualified firm in Europe to represent it in any future proceedings in the Lonza matter is even more implausible. Wyeth and/or its subsidiaries have worked with numerous European firms, including Linklaters, CMS Cameron McKenna, and Maclay Murray and Spens LLP.[5]

In sum, if there were any real prejudice to Wyeth attributable to Howrey's participation in this case (and BSC and Howrey believe there is not), it would be cured by the ethical wall that Howrey has already instituted. For this reason, Howrey's disqualification would be improper.

### III. DISQUALIFYING HOWREY WOULD HAVE POLICY IMPLICATIONS FOR ALL MULTINATIONAL LAW FIRMS WITH GLOBAL CLIENTS

Finally, in making its decision as to disqualification, the Court should consider "the ends that the disciplinary rule is designed to serve and any countervailing policies, such as *permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions*." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980) (emphasis added). Indeed, Mr. Manspeizer himself cited the "advantages" that firms with a "global presence" bring to clients. (Tr. 61:15-17; *see id.* at 168:15-169:5.) The Court should not apply the ethical rules in an overly restrictive manner that would deprive clients and firms of the benefits and efficiencies of multi-national practices.

Disqualification in instances such as this one would particularly disadvantage multi-national law firms like Howrey, which commonly have offices in both the U.S. and in Europe. It is undisputed that Howrey's limited work for Wyeth-related entities is performed by European attorneys in Europe. Under the ethical rules in their home jurisdictions, these European attorneys would be permitted to represent parties adverse to Wyeth or any other Wyeth-related entity, so long as the matter was not substantially related to their Wyeth-related engagement. (Tr. at

---

[5] *See, e.g., John Wyeth & Bros. Ltd. et al., v. Judicial Review*, 2008 WL 2443262 (Sess. June 10, 2008) (represented by Maclay Murray & Spens); *Wyeth v. Knoll Aktiengesellschaft*, 2002 WL 499016 (EWHC May 9, 2002) (represented by Linklaters); *John Wyeth & Bros. Ltd. v. Cigna Ins. Co.*, 2001 WL 239739 (EWCA (Civ) Feb. 9, 2001) (represented by CMS Cameron McKenna).

128:18-129:2.) Disqualifying Howrey in this case would effectively impose U.S. conflict rules on lawyers, like Dr. Feldges, who work in Europe for multi-national firms and could potentially encourage large companies like Wyeth to parcel out small matters in Europe among such firms to provide a basis for precluding them from adverse representations in U.S.-based litigation. *See SWS Fin. Fund A v. Salomon Bros.*, 790 F. Supp. 1392, 1402 (N.D. Ill. 1992) ("Clients of enormous size and wealth, and with a large demand for legal services, should not be encouraged to parcel their business among dozens of the best law firms as a means of purposefully creating the potential for conflicts"). In the long-run, both the firms and their clients, who would be deprived of the benefits of such global practices, would be harmed.

## CONCLUSION

For the reasons set forth above, at the July 22, 2009 hearing, and in BSC's opposition and surreply briefs, Wyeth's motion to disqualify should be DENIED.

| | |
|---|---|
| August 11, 2009 | YOUNG CONAWAY STARGATT & TAYLOR LLP |
| | */s/ Karen L. Pascale* |
| OF COUNSEL: | |
| | Josy W. Ingersoll (#1088) [jingersoll@ycst.com] |
| Paul M. Richter | Karen L. Pascale (#2903) [kpascale@ycst.com] |
| Jeffrey S. Ginsberg | Karen E. Keller (#4489) [kkeller@ycst.com] |
| KENYON & KENYON LLP | Andrew A. Lundgren (#4429) [alundgren@ycst.com] |
| One Broadway | The Brandywine Building |
| New York, NY 10004 | 1000 West St., 17th Floor |
| (212) 425-7200 | Wilmington, DE 19801 |
| | Telephone: (302) 571-6600 |
| James F. Hibey | |
| Matthew M. Wolf | |
| HOWREY LLP | |
| 1299 Pennsylvania Ave NW | *Attorneys for Plaintiffs* |
| Washington DC 20004 | *Boston Scientific Corporation and* |
| (202) 783-0800 | *Boston Scientific Scimed, Inc.* |

10

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on August 11, 2009, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick, Esquire [sbalick@ashby-geddes.com]
> John G. Day, Esquire [jday@ashby-geddes.com]
> Lauren E. Maguire, Esquire [lmaguire@ashby-geddes.com]
> ASHBY & GEDDES
> 500 Delaware Avenue, 8th Floor
> Wilmington, DE 19801

I further certify that on August 11, 2009, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel and on the following non-registered participants in the manner indicated:

### *By E-Mail*

> David T. Pritikin, Esquire [dpritikin@sidley.com]
> William H. Baumgartner, Esquire [wbaumgartner@sidley.com]
> Russell E. Cass, Esquire [rcass@sidley.com]
> Andrew R. Hein, Esquire [ahein@sidley.com]
> Jon M. Spanbauer, Esquire [jspanbauer@sidley.com]
> SIDLEY AUSTIN LLP
> One South Dearborn
> Chicago, IL 60603

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Karen L. Pascale*

Josy W. Ingersoll (No. 1088) [jingersoll@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
Karen E. Keller (No. 4489) [kkeller@ycst.com]
Andrew A. Lundgren (No. 4429) [alundgren@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
*Attorneys for Plaintiffs, Boston Scientific Corporation and Boston Scientific Scimed, Inc.*